EGISTO P. FABBRI et al., Respondents, *v.* THE MERCANTILE MUTUAL INSURANCE COMPANY, Appellant.

(GENERAL TERM, FIRST DEPARTMENT, NOVEMBER, 1872.)

In an action against a marine insurance company, plaintiffs claimed a recovery by virtue of a written application by plaintiffs to defendant "for not less than $10,000," marked "binding" by the company. *Held*, that in order to establish a contract between the parties, evidence was admissible to show that a custom existed between the plaintiffs and several insurance companies, including the defendant, in cases where the value of property upon which insurance was desired was not known at the time of the application, by which custom applications were made like the one mentioned, to the various companies, for insurances in sums in the aggregate amounting to what plaintiffs supposed might "be the actual value of the property at risk, and that such applications were accepted and made binding for such indefinite sums, with the understanding that when the value of the property at risk should be ascertained, the amount so insured by the respective companies should be declared and apportioned so that the amounts actually insured should

Fabbri v. The Mercantile Mutual Insurance Co.

bear the same proportion to the property actually at risk as they bore to the aggregate of all the indefinite insurances thereon; and that after the amount had been so ascertained and fixed, a policy in the form then in use was issued by the respective companies for the precise sum so fixed and adjusted; and that in this case the plaintiffs, not knowing the actual value of the property, had made insurances in like manner with certain of the other companies upon the property, in various sums.

*Held,* also, that the contract created by the acceptance of the application, as explained by evidence of the practice mentioned, would render the defendant liable for a proportionate amount of the loss to the amount insured, notwithstanding a clause contained in the policies used by defendant, to the effect that if the insured made any other insurance upon the property, prior in date to the policy, then the defendant should be answerable only for so much as the amount of such prior insurance might be deficient toward fully covering the property insured, and there were other prior insurances effected by the other companies sufficient to cover the actual loss.

THIS is an appeal from a judgment entered on the report of a referee, which directs that the defendant execute and deliver to the plaintiffs a policy for $3,688.72, gold, and that the plaintiffs recover under it that sum, with interest and costs.

The following facts appeared upon the trial, and were found by the referee:

1. That before and at the several times mentioned in the pleadings, the plaintiffs were copartners in trade and commerce, carrying on such business in the city of New York, under the firm name of Fabbri & Chauncey, and that the defendants were, and still are, a corporation created by and existing under the laws of the State of New York, and carrying on the business of marine insurance in the said city of New York.

2. That previous to, and on the 16th of February, 1867, the ship Flora McDonald, then owned by the plaintiffs, was and had been for some time previous lying at the port of Valparaiso, on the west coast of South America, taking in a cargo belonging to the plaintiffs, and destined for the port of New York, where it was to be delivered to the plaintiffs; but the quantity and value thereof shipped, and expected to be shipped, was not known to the plaintiffs until the time in that behalf hereafter stated.

3. That for some time previous to the last mentioned date, and previous to and at the time of effecting the insurances upon the aforesaid cargo, as hereinafter stated, there had existed, and was then existing, a practice and course of dealings between the plaintiffs, the Great Western Insurance Company, the Sun Mutual Insurance Company, the Orient Insurance Company, the Mercantile Mutual Insurance Company (the defendants above named), and several of the other insurance companies hereafter named, in effecting and making marine insurance upon property belonging to the plaintiffs, when the precise value thereof was not known at the time the application for insurance thereon was made, by which practice and course of dealing the plaintiffs were accustomed to make a written application to the said companies for insurance, in different sums, amounting in the aggregate to what they supposed might be the value of the property which would be at risk ; and it was stated in the applications that insurance was wanted upon the said property for " about," or "not exceeding," or "not to exceed," the sum stated therein, and such applications were accepted and made binding for such indefinite sums, with the understanding that when the value of the property at risk should be ascertained, the amount so insured should be ascertained and apportioned, so that the amount insured by each should bear the same proportion to the property actually at risk as it bore to the aggregate of all the indefinite insurances thereon ; and that after the amount had been so ascertained and fixed, a policy, in the form then in use, was issued by the respective underwriters for the precise sum so ascertained and adjusted, as aforesaid.

4. That, having heard that their aforesaid vessel was, at the date above mentioned, at Valparaiso, engaged in taking in a cargo of wool for them (without knowing what the value thereof would be, but supposing and assuming that it might amount to about $156,000, gold), the plaintiffs, under and in pursuance of the aforesaid practice and course of dealing, on the 5th of March, 1867, made a written application for insurance upon the said property to the Great Western Insurance

Fabbri v. The Mercantile Mutual Insurance Co.

Company for "about $40,000, gold;" to the Sun Mutual Insurance Company for "not to exceed $10,000, gold;" to the Orient Insurance Company, for "not to exceed $20,000, gold;" to the Mercantile Mutual Insurance Company (the defendants herein), for "not exceeding $10,000, gold," in the order of time above stated, and that each of the said companies accepted such applications and made the insurance binding.

The following is a copy of such application so made to and accepted by defendant:

"ROBINSON AND COX, GENERAL INSURANCE BROKERS,
No. 52 William street, New York.

Insurance is wanted by Fabbri & Chauncey, for account of whom it may concern, loss payable to them or order:

On wool, val. @ 18c per lb., until otherwise agreed.

Oreste,          "      invoice cost and 15 p. c. added.

Privileged to load not exceeding 25 p. c. over registered tonnage in

Per ship Flora McDonald,

At and from port or ports on W. C. S. Am. to New York.

Warranted by the assured free from claim for loss or damage arising from seizure, detention or the consequences of any other hostile act of the government or people of any seceding or revolting State of this Union,

For not exceeding $10,000, in gold....

Premium 3½ pr. ct. less 15 p. c., to return ½ p. c. if not loading over registered tonnage in ores, and no loss claimed.

Master's name.............................
Where built...............................
When built ...............................
Tonnage ..................................
When last coppered .......................
When last inspected.......................
Present condition ........................
Rate .....................................

New York, *March* 5, 1867.

Warranted to sail—not sailed last dates.

Binding.

(Signed.) C. N. V., *President.*

R. & COX, *Applicants.*

(Signed.) LETHBRIDGE,

Payable in gold. For F. & C."

5. That on the 6th of March, 1867, being still ignorant of the probable value of such cargo, the plaintiffs, in like manner, under the practice aforesaid, made written applications for insurance thereon to the International Insurance Company, for "not exceeding $5,000, gold;" to the Phœnix Insurance Company, for "not to exceed $10,000, gold;" to the United States Lloyds, for "not exceeding $5,000, gold;" to the Manhattan Insurance Company, for "not exceeding $5,000, gold;" each of which applications were accepted and made binding by the said last mentioned companies.

6. That the plaintiffs, being still ignorant of the shipment, afterward applied for insurance thereon to the Insurance Company of North America, for "not to exceed $10,000, gold;" to the Delaware Mutual Insurance Company, for "about, not to exceed $10,000, gold;" to the Phœnix Insurance Company of Philadelphia, for "about $2,500, gold;" to the Insurance Company of the State of Pennsylvania, for "not to exceed $5,000, gold;" to the Pacific Insurance Company of San Francisco, for "not exceeding $20,000, gold;" each of which last mentioned applications was accepted and made binding.

7. That the insurances so effected and made binding, as above stated, amounted in the aggregate to $152,500, gold.

8. That on the aforesaid 16th day of February, 1867, before either of the above mentioned insurances had been effected, the aforesaid vessel, then lying at Valparaiso, as above stated, was destroyed by fire, at which time she had only received a portion of the cargo intended to be shipped, that is to say, she then and there had received on board only 692 bales of

white wool and 40 bales of black wool, all of which was destroyed by the said fire and totally lost, and that at the time of such loss the same amounted in value to the sum of $56,253 gold, of the coinage of the United States.

9. That the plaintiffs were entirely ignorant of such loss at the time they effected the several insurances above mentioned, and did not hear of the same until afterward, and somewhere about the 3d of April, 1867, at which time they also ascertained the value of the cargo at risk, and covered by the aforesaid insurances, to be the sum in that behalf above stated.

10. That on the said 3d day of April, having ascertained the value of the property at risk at the time of the loss aforesaid, the plaintiffs thereupon declared and made known to the defendants and to the other insurers thereof, according to their aforesaid course of dealing, the value of the property at risk at the time of such loss, and apportioned the same among the defendants and the other insurers thereof according to the practice aforesaid, that the sum so apportioned to and for which the defendants became insurers, was $3,688.72.

11. That the blank policy of insurance annexed to the complaint is the form of policies then in use by the defendants upon similar applications, and the plaintiffs then and there demanded from the defendants a policy, according to the application in all respects, except as to the sum insured, which was to be $3,688.72 instead of $10,000 as originally stated in the application, which the defendants then and there refused to give.

12. That the plaintiffs then and there made to the defendants due proof of loss and of their interest in the property insured, and performed the conditions of insurance on their part to be performed, except the pre-payment of the premium, which the defendant had waived on making the application for insurance.

13. That the aggregate of the several insurances upon the said cargo, made prior to that of the defendants, as adjusted and fixed under the practice and course of dealing aforesaid,

did not cover the plaintiffs' loss, but left a balance due there-
for exceeding the sum of $3,688.72, the amount covered by
the defendants' policy, so adjusted and fixed as aforesaid,
which, by the terms of the policy so in use as aforesaid,
became due and payable on the 3d May, 1867.

14. That the premium due and payable by the plaintiffs to
the defendants, upon and for the said insurance, amounts to
the sum of $115.03 gold, for which the defendants are entitled
to credit, and which being deducted from the loss above men-
tioned leaves a balance of $3,573.69 gold, which with interest
thereon from 3d May, 1867, to the date of this report, amounts
to the sum of $4,584.75.

The referee decided, as matter of law, that the plaintiffs
are entitled to have a policy from the defendants duly exe-
cuted in the form of that annexed to the complaint, filled up,
according to the application of the plaintiffs, for the amount
so adjusted as above mentioned, and to a judgment against
the said defendants for the last above mentioned sum of
$4,584.75 in gold coined dollars and parts of dollars of the
coinage of the United States.

The defendant excepted to so much of the second finding
of fact, above set forth, as found that the quantity and value of
the cargo therein referred to expected to be shipped as therein
stated, was not known to the plaintiffs until the time in that
behalf thereafter stated.

Also to the third finding generally, and that there was not
evidence sufficient to support it.

Also to the tenth and thirteenth findings, and to the referee's
conclusions of law, and each and every of them.

Exception was also taken by defendant, on the trial, to the
admission of evidence to prove the practice of the various
companies, as stated in the opinion.

The blank policy of insurance above referred to, as annexed
to the complaint, contained the following clauses:

"Provided always, and it is hereby further agreed: That
if the said assured shall have made any other assurance upon
the premises aforesaid, prior in date to this policy, then the

said Mercantile Mutual Insurance Company shall be answerable only for so much as the amount of such prior assurance may be deficient toward fully covering the premises hereby assured; and the said Mercantile Mutual Insurance Company shall return the premium upon so much of the sum by them assured as they shall be by such prior assurance exonerated from."

*George W. Soren,* for the respondents.

*Townsend Scudder,* for the appellants.

Present—LEONARD and GILBERT, JJ.

By the Court—GILBERT, J.   The application for insurance to defendants was for a sum not exceeding $10,000 in gold. The defendants signified their acceptance of the application by writing upon it "binding." About the same time that this application was made, applications were made to other insurance companies for insurance upon the same property, which applications were accepted in a similar way. The aggregate amount of insurance sought by the plaintiff amounted to $152,000, and was to cover a cargo then in process of shipment. In neither case was the amount of risk which either company took definitely fixed. It was proved upon the trial, and the referee has found that there had existed, and was then existing, between the plaintiffs and the several insurance companies referred to, including the defendant, a practice and course of dealing in effecting marine insurance upon property belonging to the plaintiffs, when the precise value thereof was not known at the time the application for insurance thereon was made, by which the plaintiffs were accustomed to make written applications, like those made, in the instances referred to, being in different sums, and amounting in the aggregate to what the plaintiffs supposed might be the value of the property which would be at the risk, and such applications were accepted and made binding for such indefi-

nite sums, with the understanding that when the value of the property at risk should be ascertained, the amount so insured should be declared and apportioned so that the amount insured by each should bear the same proportion to the property actually at risk as it bore to the aggregate of all the indefinite insurances thereon, and that after the amount had been so ascertained and fixed, a policy in the form then in use was issued by the respective underwriters for the precise sum so ascertained and adjusted as aforesaid. It also appears, and the referee has so found, that the value of the property intended to be insured was not known to the plaintiff at the time such applications were made. It is not disputed by the defendant that the contract created by the acceptance of the application, as explained by evidence of the practice mentioned, would render the defendant liable for a proportionate amount of the loss in this case, notwithstanding the clause of prior insurance contained in the policies used by them, and such no doubt is the rule of law. But the defendant contends that evidence of the practice mentioned was inadmissible. We think otherwise. It is true the evidence did not prove any general usage, nor was it given for that purpose. It was given to show what was the actual contract between the parties to the action; and we think within settled rules it was not only competent, but absolutely essential for that purpose. (Duer Ins., vol. 1, pp. 263 and 57; *Bourne* v. *Gatliff*, 11 Cl. & Fin., 45; *Bliven* v. *N. E. Screw Co.*, 23 How., 421; *Allen* v. *Merch. Bk.*, 22 Wend., 215; *Vansantvoord* v. *St. John*, 7 Hill, 158.) The defendants' objection to the testimony of Hazen, even if well founded, would not warrant us in reversing the decision of the referee. There being sufficient evidence without his testimony to sustain the judgment, the error, if any, of the referee in omitting that testimony was not injurious to the defendant. (*People* v. *Gonzales*, 35 N. Y., 59.) The judgment should be affirmed, with costs.